IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| STOLEARM N. ANDERSON JR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-140 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 16] will be granted, and plaintiff's motion for summary judgment [doc. 14] will be denied.

I.

*Procedural History*

Plaintiff was born in 1951. He applied for benefits in December 2003, claiming to be disabled by back pain, neck pain, knee pain, back spasms, incontinence, and an aortic aneurysm. [Tr. 105, 139, 149, 349]. Plaintiff alleged a disability onset date of November 29, 2002. [Tr. 105, 349]. The present applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an

Administrative Law Judge ("ALJ") on December 1, 2005.

By decision dated December 19, 2005, the ALJ ruled plaintiff ineligible for benefits. Plaintiff then sought review from the Commissioner's Appeals Council. In May 2006, the Appeals Council granted plaintiff's request for remand. [Tr. 38].

Plaintiff received a second administrative hearing in September 2006. The following month, the ALJ issued a second decision denying benefits. He concluded that plaintiff suffers from "degenerative disk disease of the cervical and thoracolumbar spine," which is a "severe" impairment but not equal to any impairment listed by the Commissioner. [Tr. 20]. Terming the subjective complaints "not entirely credible," the ALJ found plaintiff to have the residual functional capacity ("RFC") to perform medium exertion subject to certain mental limitations. [Tr. 27-29]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the state and national economies. [Tr. 30]. Plaintiff was accordingly again deemed ineligible for benefits.

Plaintiff then again sought, and was denied, Appeals Council review. [Tr. 8]. The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court. *See* 42 U.S.C. § 405(g).

2

Case 2:07-cv-00140   Document 23   Filed 01/06/09   Page 2 of 20   PageID #: 81

## II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

3

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[1] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

---

[1] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

III.

*Background*

Plaintiff has either a third [Tr. 343, 526] or fourth [Tr. 145, 315] grade education. His past relevant employment is as a heavy equipment operator. [Tr. 170]. He reportedly stopped working on November 29, 2002, after falling off of a backhoe. [Tr. 187, 277].

Plaintiff purports to be in constant pain. [Tr. 149]. He claims to be able to do little more than watch television and occasionally walk in his yard. [Tr. 188, 216, 230]. He can drive. [Tr. 342].

Plaintiff spent more than four years in jail in the 1980s, and nine months in jail in the 1990s, for charges pertaining to assault, public drunkenness, and DUI. [Tr. 320, 343, 362, 527-28, 564-65]. He reportedly stopped drinking in 1983 and now deems himself a productive, honest, and trustworthy member of society. [Tr. 315, 343, 565-66].

It is claimed that plaintiff is unable to afford medical care [Tr. 14, 152, 187, 535], medication [Tr. 187], or even food [Tr. 180]. Inexplicably, however, he can afford up to two packs of cigarettes per day [Tr. 313] and has sufficient funds to purchase narcotics "off the street." [Tr. 304].

IV.

*Vocational Expert Testimony*

Dr. Norman Hankins ("VE") testified as a vocational expert at the second administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's size, education, and work background. The hypothetical claimant would be capable of no more than medium work and would have "an emotional disorder with restrictions regarding his ability to perform work related activities consistent with Dr. Lawhawn's [sic] assessment, that being Exhibit 14F." [Tr. 567]. The VE testified that jobs such as janitor, grounds keeper, hand packer, or construction worker would exist in sufficient numbers in the state and national economies under that hypothetical. [Tr. 567-68]. If plaintiff's testimony were fully credible, or if he were limited to less than the full range of sedentary exertion, Dr. Hankins testified that all employment would be precluded. [Tr. 574-77].

V.

*Analysis*

Plaintiff raises numerous and scattered challenges to the ALJ's final decision. The court will discuss related issues together below, rather than in the order and structure presented by plaintiff in his briefing. Any issue not specifically raised by plaintiff has been waived. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

> [W]e decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.

*Id.* at 491.

### A. "Severe" Impairments under *Drummond*

In the ALJ's first (December 2005) ruling, plaintiff was found to suffer from the severe impairments of "back pain that radiates into left hip, aortic aneurysm, and depression . . . ." [Tr. 80]. In his second (October 2006) ruling, the ALJ found plaintiff to suffer only from the severe impairment of "degenerative disk disease of the cervical and thoracolumbar spine . . . ." [Tr. 20]. Plaintiff now appears to argue that, because his aneurysm and depression were found to be "severe" impairments in the ALJ's first decision, the principle of *res judicata* mandates the same result thereafter.

> Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.
>
> . . .
>
> . . . When the Commissioner has made *a final decision* concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances. . . .

*Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (emphasis added).

Plaintiff's reliance on *Drummond* is misplaced. *Drummond* binds the Commissioner only in cases where there has been a prior "final decision." Where, as here,

7

a previous decision has been vacated by the Appeals Council, there is no prior "final decision." *Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x 570, 571 (6th Cir. 2003); 20 C.F.R. § 404.955(a) ("The decision of the administrative law judge is binding on all parties to the hearing unless [y]ou or another party request a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews your case[.]"). The present ALJ therefore was not bound by his initial findings. *Wireman*, 60 Fed. App'x at 571.

In a related argument, plaintiff complains, "The current decision does not explain why the impairments listed as 'severe' in the previous decision are not considered 'severe' in the current decision." That argument is unfounded. The ALJ pointed out that plaintiff's aneurism is currently asymptomatic, and he explained his adoption of consulting psychologist Steven Lawhon's opinion that plaintiff's depression causes no more than a "mild" limitation in any vocational capacity. [Tr. 29].

### B. Dr. Lawhon

Dr. Lawhon generated a psychological evaluation in August 2005. After interviewing plaintiff, Dr. Lawhon diagnosed mild to moderate anxiety and depression. [Tr. 345]. He predicted "slight" or "mild" limitations in concentration, persistence, work adaptation, responding to work pressures, and processing detailed instructions. [Tr. 345-48]. The evaluation is exhibit 14-F in the administrative record.

Dr. Lawhon's conclusions are consistent with the remainder of the objective evidence. Nonexamining Dr. Tom Neilson completed a Mental RFC Assessment in October

8

2004 and predicted no more than "moderate" limitation in any vocational capacity. [Tr. 339-41]. Plaintiff briefly received antidepressant medication from Holston Counseling Center in mid-2004. [Tr. 365]. He was diagnosed with depression but was described as "[s]table at last contact." [Tr. 365]. On the date of Dr. Karl Konrad's consultative physical examination, plaintiff's mental status was noted to be "normal." [Tr. 306].

Plaintiff now challenges the form of the ALJ's hypothetical question to Dr. Hankins. As noted above, the ALJ presented a hypothetical claimant limited in material part by "an emotional disorder with restrictions regarding his ability to perform work related activities consistent with Dr. Lawhawn's [sic] assessment, that being Exhibit 14F." [Tr. 567]. Plaintiff now alleges that the ALJ erred by "simply refer[ring] the vocational expert to a medical report . . . which allows the vocational expert to interpret medical evidence and conclusions. The interpretation of the evidence is the exclusive responsibility of the Administrative Law Judge and cannot be delegated to the vocational expect [sic] . . . ."

The ALJ did not ask Dr. Hankins to interpret medical evidence. Instead, the VE was specifically directed to consider "restrictions . . . consistent with Dr. Lawhawn's [sic] assessment, that being Exhibit 14F." [Tr. 567]. In turn, Dr. Lawhon's evaluation (Exhibit 14-F) contains specific ratings of fourteen vocational capacities, none of which was predicted to be impaired more than "mildly" or "slightly." [Tr. 345-47]. Moreover, not only did plaintiff's attorney fail to dispute the content of the hypothetical question at the administrative hearing, he in fact repeated the very same question to the VE himself. [Tr.

9

571]. This issue warrants no further discussion.

Next, plaintiff complains that the ALJ provided "no explanation . . . as to what restrictions are imposed as a result of the 'emotional disorder' mentioned in Finding No. 6" located at page 80 of the administrative record. The challenged language, however, is from the ALJ's first opinion, which as noted is not the Commissioner's final decision because it was reversed and remanded by the Appeals Council. The ALJ's first decision is simply not relevant to the present appeal.

Lastly, plaintiff complains that, in referring to Dr. Lawhon's opinion, the ALJ did not use exactly the same language in his second decision as he used in his first. Again, the ALJ's first ruling is not at issue in this appeal.

## C. Credibility

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 28]. Plaintiff argues that a number of factors were not sufficiently considered in assessing his credibility.

For example, plaintiff contends that his credibility is bolstered by his "consistent and aggressive efforts to obtain relief from his symptoms." The court is not persuaded that the administrative record is entirely favorable to him on this point. Plaintiff's abdominal aortic aneurysm was diagnosed in November 2002 [Tr. 250], yet he did not seek

10

treatment until June 2004 [Tr. 313], even though he testified that the condition renders him a "[d]ead man walking." [Tr. 534]. It is noteworthy that, after reviewing an abdominal ultrasound, Dr. Daniel Gonzalez stated in July 2004 that the aneurysm was not of a sufficient size to warrant repair. [Tr. 313]. He instructed plaintiff to return in one year for reassessment. [Tr. 313]. The aneurysm remained unchanged as of May 2005, December 2005, February 2006, and March 2006. [Tr. 414, 470, 484, 488, 495].[2]

Also, although plaintiff briefly sought therapy and medication from Holston Counseling Center in mid-2004, he was soon discharged due to repeated "no-shows" at counseling and medication management appointments. [Tr. 363-65]. Plaintiff's claim of tenaciously pursuing treatment is also dubious in light of his continued consumption of up to two packs of cigarettes per day [Tr. 313] while simultaneously claiming to be unable to afford medical care [Tr. 14, 152, 187, 535].

Plaintiff also cites third-party reports in support of his claim. These documents were filed by his wife, Tina Anderson, and by his stepson, David Barnette, largely echoing plaintiff's own subjective complaints. [Tr. 178-186, 191-99]. The court has reviewed the third-party reports and concludes that they do not affect the substantiality of the evidence supporting the ALJ's adverse credibility determination.

The court particularly notes that Mrs. Anderson, in her March 15, 2004 report (which was sworn under penalty of perjury [Tr. 186]), claimed that she and her husband

---

[2] Plaintiff's characterization of himself as a "dead man walking" in spite of this knowledge is suggestive of a claimant who exaggerates his subjective complaints.

11

could no longer "afford to buy the groceries." [Tr. 180]. However, a mere two months after Mrs. Anderson's sworn statement, plaintiff acknowledged having sufficient funds to purchase "Percocet, Percodan, and Lortab, all of which he buys *off the street*" [Tr. 304] (emphasis added), and he remained financially able to smoke heavily [Tr. 304]. Viewing the administrative record as a whole, the ALJ's credibility determination remains supported by substantial evidence despite the subjective reporting of plaintiff's interested third-party witnesses.

D. Typographical Error

Plaintiff next points out an apparent typographical error in the ALJ's ruling. Section 6 of the ALJ's findings and conclusions contains the heading, "The claimant is unable to perform any past relevant work." [Tr. 29]. However, in the brief discussion that follows, the ALJ wrote in material part that plaintiff "*can* return to past relevant work." [Tr. 29] (emphasis added).

Obviously, one of the two statements is a typographical error. Either way, the error is harmless. The ALJ's decision was not ultimately based on a step four finding that plaintiff can return to past relevant work. Instead, the ALJ proceeded to step five, relied upon vocational expert testimony, and concluded that plaintiff remains able to perform other work existing in sufficient numbers in the economy. The typographical error pertaining to past relevant work is therefore irrelevant.

E. SSR 96-8P

It is next argued that the ALJ violated Social Security Ruling 96-8p, 1996 WL 374184, by not individually discussing plaintiff's ability to perform each of the functions of medium work. However, "[a]lthough SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Like the ALJ in *Delgado*, the present ALJ "discussed the medical and other evidence on the disputed issues and explained the basis for his determination of [plaintiff's] RFC." *Id.* at 548. The court has reviewed the ALJ's ruling. On the facts of this particular case, his RFC findings were sufficient under SSR 96-8p and *Delgado*.

F. RFC

Citing several medical source opinions, plaintiff's primary argument on appeal is that the ALJ's RFC findings, along with the hypothetical question presented to the VE, did "not include all the limitations which have been established by substantial evidence in the record as a whole." Before addressing the specific contentions on this point, the court will first summarize the medical record.

Soon after plaintiff's on-the-job injury, December 2002 imaging showed "lumbar spondylosis and degenerative disc disease most notably at L5-S1" but no herniation

13

or stenosis. [Tr. 267-68].[3] Treating physician Robert Strang deemed these results "negative" and "normal." [Tr. 274-76].

In January 2003, Dr. Strang observed limited range of motion in the lower back. [Tr. 275]. In March 2003 he noted "some stiffness" in the neck and lower back. [Tr. 271]. Plaintiff complained of pain radiating into the legs, but straight leg testing performed by Dr. Strang was "normal." [Tr. 271].[4]

Upon referral by Dr. Strang, "Rehab*Plus* West Market" evaluated plaintiff in December 2002. Therapist Jody Musick noted a "good" potential for rehabilitation, and straight leg raise testing was negative. [Tr. 281, 284]. In a functional capacity assessment ("FCE") performed in February 2003, therapist Ricky Johns opined that plaintiff could lift up to 37 pounds occasionally and 15 pounds frequently. [Tr. 303].

Dr. Strang reviewed the assessment, deemed it "valid," and opined that plaintiff could return to work within those parameters. [Tr. 271, 274]. Dr. Strang did not feel that any further medical treatment would be required other than "except to perhaps take pain medication from time to time," continue all prescribed exercises, and stop smoking. [Tr. 270].

---

[3] Spondylosis is "a general term for degenerative spinal changes due to osteoarthritis." *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000). Spinal stenosis is "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space." *Id.* at 1698.

[4] *Positive* straight leg raise testing would be indicative of nerve damage radiating from the lower back. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00(D), 1.04(A).

14

Dr. Karl Konrad performed a consultative physical examination in May 2004. Plaintiff exhibited full range of movement in all joints, had full strength in all extremities, and could change positions "with no or minimal difficulty." [Tr. 305]. He exhibited no spinal tenderness or muscle spasm, and straight leg raise testing was negative. [Tr. 305]. Noting "modest limited range of motion of the lumbar spine," "some limited range of motion of the cervical spine," and "minimal degenerative changes," Dr. Konrad opined that plaintiff "has no impairment-related physical limitations." [Tr. 306].

Nonexamining Dr. Mona Mishu completed a Physical RFC Assessment in June 2004. Dr. Mishu opined that plaintiff would be limited to the full range of medium work. [Tr. 308-12].

Plaintiff was treated by nurse practitioner Dana Allen from August 2004 through January 2005. Plaintiff reported taking four hydrocodones per day for pain relief. [Tr. 435]. Ms. Allen noted that same date that "[a]ll x-rays on our chart are negative." [Tr. 435].

Plaintiff reported to Dr. Amylyn Crawford for the first time in February 2005. [Tr. 401]. Dr. Crawford noted only mild tenderness of the lumbar and cervical spine, with no significant spasms. [Tr. 400]. Plaintiff wanted a refill of his hydrocodone prescription. Dr. Crawford "advised that I will not refill his medications at this time until review of his previous records and reports." [Tr. 400].

15

Plaintiff apparently did not return to Dr. Crawford, instead initiating a treatment relationship with "Centerpointe Medical Clinic" staffed by Dr. Brian Donovan and nurse practitioners Tina Killebrew, Ina Kay Bone, Elizabeth Krell, and Craig Howard. Plaintiff "angrily" reported that Dr. Crawford "didn't care about me" and did "not want[] to give me my meds." [Tr. 395, 398]. Ms. Bone immediately wrote a prescription for hydrocodone without reviewing plaintiff's prior records. [Tr. 398-99]. Plaintiff returned to Centerpointe two weeks later claiming that his hydrocodone "ran out early." [Tr. 392]. Either Dr. Donovan or Ms. Krell noted positive straight leg testing, and Mr. Howard issued a new hydrocodone prescription. [Tr. 392-93].

2005 imaging in the Centerpointe file shows bilateral spondylosis at L5 without evidence of corresponding spondylolisthesis, mild spondylosis bordering C5 to C7, and "[m]ultilevel degenerative disc disease" of the thoracic spine. [Tr. 421-22].[5] In October 2005, Ms. Killebrew wrote a letter "To Whom It May Concern" summarizing plaintiff's Centerpointe treatment record and thanking the reader "for your attention to this matter." [Tr. 443]. The letter contains no vocational assessment.

In November 2005, neurologist Gamal Boutros observed tenderness at C5/C6 and at L4/L5, along with "some limitation of cervical spine motion." [Tr. 461]. Plaintiff complained that his back pain radiated into the left leg, and Dr. Boutros ordered a nerve conduction study of all extremities. [Tr. 461]. The results of that study were normal,

---

[5] Spondylolisthesis is the forward displacement of one vertebra over another. *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000).

16

"show[ing] no evidence of neuropathy or radiculopathy." [Tr. 462-64].

"Apple Rehab Services" performed an FCE in November 2005. Physical therapist Tony Villanueva opined that plaintiff would be limited to less than the full range of sedentary work. [Tr. 447]. Testing showed a high self-focus on pain and disability, but plaintiff "tested negative for symptom magnification." [Tr. 448, 452]. There is no indication that this evaluation was performed upon referral from, or was subsequently reviewed and/or adopted by, any physician.

Further lumbar imaging was performed in December 2005. Dr. Richard Kubota's impression was a "[v]ery small very far left lateral probably L4/L5 herniated/protruded disc. There is no apparent encroachment on the nerve root sleeves or thecal sac." [Tr. 470].

Lastly, a July 29, 2006 letter signed by Ms. Bone cites plaintiff's cardiac, prostate, and spinal complaints. The letter concludes, "I believe he is totally and permanently disabled due to multiple medical problems." [Tr. 497].

Plaintiff argues that the ALJ improperly disregarded Ms. Bone's July 2006 letter and the Apple Rehab FCE. The court cannot agree.

To the extent that Ms. Bone "believe[s] he is totally and permanently disabled due to multiple medical problems," the ultimate question of disability is reserved to the Commissioner, not the treating source. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Further, Ms. Bone's letter merely recites plaintiff's medical conditions rather than addressing

17

how those conditions affect specific vocational capacities. For these reasons, the letter is of no import.[6]

The court also finds no error in the ALJ's rejection of the Apple Rehab FCE. The ALJ pointed out that, in contrast to the Rehab*Plus* FCE, the Apple Rehab evaluation was evidently neither ordered, reviewed, nor adopted by a physician (treating or otherwise). [Tr. 26]. The ALJ also sufficiently discussed the administrative record as a whole, pointing out that the Apple Rehab conclusions were "an anomaly." [Tr. 29].

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The ALJ acted within that zone of choice in the present case, adequately explaining his adoption of the evidence he found most credible and consistent. His RFC conclusions were a reasonable synthesis of the opinions of Drs. Konrad, Mishu, and Strang.

It should be made clear that the ALJ did not conclude that plaintiff does not suffer some discomfort. Plaintiff's physical complaints were taken into account by the ALJ in restricting the RFC to no more than medium exertion. It is the *severity* of plaintiff's condition that is at issue, and substantial evidence supports the ALJ's conclusion that the

---

[6] In addition, the court shares in the ALJ's dismay [Tr. 25] that Ms. Bone and the Centrepointe staff immediately provided plaintiff with a hydrocodone prescription on his first visit despite warning signs suggestive of drug seeking. [Tr. 395, 398]. The court stresses that nothing in the administrative record definitively establishes that plaintiff either sells or abuses his government-provided narcotics. However, he admittedly has engaged in the prescription street drug trade *at least as* a purchaser. [Tr. 304].

18

present complaints are to some degree overstated.

There is evidence that plaintiff suffers from conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that plaintiff's documented conditions are not "of such a severity that [they could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853.

In sum, the present record unquestionably contains substantial evidence to support the conclusions that plaintiff's complaints are overstated and that he refuses to responsibly participate in his own health care. He purportedly cannot afford beneficial medication and treatment, yet he remains financially able to smoke heavily and purchase street drugs. Plaintiff's style of life is inconsistent with that of a person who suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege – but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

*Id.*

The Commissioner's final decision survives substantial evidence review and will not be reversed by this court. An order consistent with this opinion will be entered.

ENTER:

       s/ Leon Jordan
United States District Judge